UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MICHAEL PETERSON, and
DIPE, LLC,

                              Plaintiffs,

            v.

TIFFIN MOTOR HOMES, INC.,

                              Defendant.
_____

REPORT
and
RECOMMENDATION
----------------------------
DECISION
and
ORDER

17-CV-01186V(F)

APPEARANCES:        BURDGE LAW OFFICE
                    Attorneys for Plaintiffs
                    RONALD L. BURDGE, of Counsel
                    8250 Washington Village Drive
                    Dayton, Ohio  45458

                    GALLO VITUCCI KLAR PINTER & COGAN
                    Attorneys for Defendant
                    HOWARD P. KLAR, and
                    TAMMY ANN WILSON, of Counsel
                    185 Madison Avenue
                    12th Floor
                    New York, New York  10016

## JURISDICTION

This case was referred to the undersigned by Hon. Lawrence J. Vilardo on February 19, 2019, for all pretrial matters including preparation of a report and recommendation on dispositive motions.  The matter is presently before the court on Defendant's motion filed March 21, 2018 (Dkt. 10), seeking to dismiss for lack of personal jurisdiction or, alternatively, to transfer venue.[1]

---

[1] Defendant's motion is dispositive insofar as it seeks to dismiss for lack of personal jurisdiction or for improper venue; the motion is non-dispositive with regard to the alternative request to transfer venue, *see Buffalo Newspress Inc. v. Adlife Marketing & Communications Co., Inc.*, 2019 WL 3886725, at * 1 (W.D.N.Y. Aug. 19, 2019) (considering defendant's motion for transfer of venue as non-dispositive, citing

## BACKGROUND

On November 20, 2017, Plaintiffs Michael Peterson and DIPE, LLC ("Plaintiffs"), both residents of Pennsylvania, filed this contract action alleging breach of warranty against Defendant Tiffin Motor Homes, Inc. ("Defendant"), an Alabama corporation, based on Plaintiffs' purchase of a recreational vehicle ("the RV"). The RV was manufactured by Defendant and sold to non-party Colton Auto RV ("Colton"), in North Tonawanda, New York, which then sold the RV to Plaintiffs on September 29, 2017. After purchasing the RV, Plaintiffs experienced numerous malfunctions requiring Plaintiffs repeatedly bring the RV for repairs from Pennsylvania to Colton in New York, but the RV was never repaired to Plaintiffs' satisfaction. Unhappy with the RV, Plaintiffs commenced the instant action asserting three claims seeking relief under New York General Business Law ("N.Y. Gen. Bus. Law") § 198-a(n)(6) and (8) ("New York's Lemon Law" or "the Lemon Law"), Complaint, First Claim ("Lemon Law Claim"); the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301 *et seq.*, Complaint, Second Claim ("Warranty Act Claim"); and N.Y. Gen. Bus. Law §§ 349-c through 350-f, Complaint, Third Claim ("Deceptive Practices Claim").

Defendant did not file an answer; rather, on March 21, 2018, Defendant filed the instant motion (Dkt. 10) ("Defendant's Motion"), seeking to dismiss pursuant to Fed.R.Civ.P. 12(b)(2) for lack of personal jurisdiction, and Fed.R.Civ.P. 12(b)(3) for

district court cases within Second Circuit in support), which a magistrate judge has authority to hear and determine pursuant to a referral order under 28 U.S.C. § 636(b)(1)(A). *Daniel v. American Bd. of Emergency Medicine*, 988 F.Supp. 127, 255 n. 157 (W.D.N.Y. 1997). All issues before the court on Defendant's motion are addressed in this combined Decision and Order/Report and Recommendation in the interest of clarity and judicial economy.

improper venue or, alternatively, to transfer venue pursuant to 28 U.S.C. § 1404.[2] Defendant's Motion is supported by the attached Affidavit of Shannon L. Werner (Dkt. 10-1) ("Werner Affidavit"), with exhibits 1 through 3 (Dkts. 10-2 through 10-4) ("Werner Affidavit Exh(s). __"), and Defendant Tiffin Motor Home, Inc.'s Memorandum of Law in Support of Its Motion to Dismiss or in the Alternative, to Transfer Venue (Dkt. 10-5) ("Defendant's Memorandum"), attaching exhibits A through C (Dkts. 10-6 through 10-8) ("Defendant's Exh(s). __").  On June 13, 2018, Plaintiffs filed Plaintiffs' Memorandum of Law in Opposition to Defendant's Motion to Dismiss or in the Alternative, to Transfer Venue (Dkt. 18) ("Plaintiffs' Response"), attaching exhibits 1 through 10 (Dkts. 18-1 through 18-10) ("Plaintiffs' Exh(s). __").  On June 27, 2018, Defendant filed Defendant's Memorandum of Law in Further Support of its Motion to Dismiss or in the Alternative, to Transfer Venue, and in Response to Plaintiffs' Opposition (Dkt. 19) ("Defendant's Reply"), attaching exhibits 1 through 3 (Dkts. 19-1 through 19-3) ("Defendant's Reply Exh(s). __").  With leave of the court, Plaintiffs filed on July 6, 2018, Plaintiffs' Supplemental Memorandum of Law in Opposition to Defendant's Motion to Dismiss or in the Alternative, to Transfer Venue (Dkt. 23) ("Plaintiffs' Sur-Reply"), attaching an exhibit (Dkt. 23-1) ("Plaintiffs' Sur-Reply Exh.").   With leave of the court, Defendant filed on July 23, 2018, Defendant's Memorandum of Law in Further Support of its Motion to Dismiss or in the Alternative, to Transfer Venue, and in Response to Plaintiffs' Supplemental Response (Dkt. 25) ("Defendant's Sur-Reply"), attaching exhibit G (Dkt. 25-1) ("Defendant's Exh. G").  Oral argument was deemed unnecessary.

---

[2] Defendant also states its motion is pursuant to Fed.R.Civ.P. 12(b)(5), *i.e.*, for insufficient service of process, but presents no argument on this ground which, accordingly, the court does not address.

Based on the following, Defendant's Motion should be DENIED insofar as Defendant seeks to dismiss the action under Fed.R.Civ.P. 12(b)(2) for lack of personal jurisdiction, and is GRANTED as to the request under 28 U.S.C. § 1404(a) to transfer venue to the Northern District of Alabama, Northwestern Division ("Northern District of Alabama"), as provided for by a forum selection clause, or alternatively, should be DENIED insofar as Defendant seeks dismiss under Fed.R.Civ.P. 12(b)(3) for improper venue with the matter transferred, in the court's discretion, pursuant to 28 U.S.C. § 1406(a) to the Northern District of Alabama.

## **FACTS**[3]

Plaintiff Michael Peterson ("Peterson"), domiciled in Erie, Pennsylvania, incorporated Plaintiff DIPE, LLC ("DIPE") (together, "Plaintiffs"), in Pennsylvania at the advice of Peterson's accountant for the sole purpose of holding title to a motor home or recreational vehicle, to be purchased for personal use by Peterson and his wife. Defendant Tiffin Motor Homes, Inc. ("Defendant" or "Tiffin"), is an Alabama corporation engaged in the manufacture and servicing of recreational vehicles throughout the United States. As relevant to this action, Colton Auto & RV ("the Dealer" or "Colton"),[4] located in North Tonawanda, New York, is an authorized dealer and an authorized service center for recreational vehicles manufactured by Defendant. On August 19, 2016, Defendant sold to the dealer a 2017 Tiffin Zephyr 450Z motor home ("the RV"), for resale to a consumer. On September 29, 2016, the RV was purchased by Plaintiffs from the Dealer.

---

[3] The Facts are taken from the pleadings and motion papers filed in this action.
[4] The Dealer is not a party to this action.

Prior to purchasing the RV, Peterson attended an RV show in Hershey, Pennsylvania ("the Hershey RV show"), to investigate the possibility of purchasing a Tiffin motor home. Peterson considered quality and warranty important in purchasing an RV, and maintains he previously owned a Thor RV for which all repairs had to be made in Indiana, a trip of some distance from Peterson's Pennsylvania residence. Peterson Affidavit[5] ¶ 4; Peterson Sur-Reply Affidavit[6] ¶ 4. Plaintiffs maintains that at the RV show, Peterson met with Bob Tiffin ("Tiffin"), owner of Defendant Tiffin, and specifically discussed the warranty for Defendant's motor homes. Peterson Affidavit ¶ 4. According to Plaintiff, Tiffin provided a brochure ("the brochure"),[7] describing the Zephyr 450Z model motor home; on the lower half of the brochure's last page is printed the written text of the Tiffin Five Star Warranty ("Five Star Warranty").[8] The Five Star Warranty is separate from the Tiffin Motorhomes, Inc. House/Coach/ Powerglide Chassis Limited Warranty ("the Limited Warranty"),[9] comprising 18 pages and including, *inter alia*, an arbitration agreement, Limited Warranty § 8, and a Jurisdiction and Venue provision, *id*. § 9 ("forum selection clause"), providing that the exclusive jurisdiction and venue for any arbitration or legal action is "in the State Court of General Jurisdiction in and for Franklin County, Alabama, or in the Federal District Court Division that includes Franklin County, Alabama." Limited Warranty § 9 (Dkt. 10-4 at 13).[10] Although the

---

[5] Dkt. 18-1.
[6] Dkt. 23-1.
[7] Dkt. 18-3.
[8] Filed both as Dkt. 18-3 at 10; and separately as Dkt. 18-4.
[9] Dkt. 10-4.
[10] The Limited Warranty's forum selection clause specifically provides
    Purchaser and Tiffin agree that exclusive jurisdiction of any proceeding hereunder shall be in the state court of general jurisdiction in and for Franklin County, Alabama, or in the Federal District Court Division that includes Franklin County, Alabama. Purchaser and Tiffin agree to submit themselves, in any legal action or proceeding between them relating to this limited warranty or otherwise to the state or federal court for Franklin County, Alabama, and consent that any action

Limited Warranty provides more specifics about its application and how to obtain service when the need arises, in addition to arbitration and venue provisions, all the warranty representations in the Five State Warranty are included in the Limited Warranty,[11] but the First State Warranty does not include any choice of forum clause or language. The Limited Warranty also instructs the purchaser to acknowledge receipt and thereby register the Limited Warranty by signing the provided registration card to facilitate the purchaser's notification of any product recalls or service bulletins, but that the Limited Warranty governs the parties' rights and obligations regardless of whether the purchaser registers it. *Id.* § 10. In connection with the purchase of the RV, Plaintiffs signed a Warranty Registration Form ("Warranty Registration"),[12] acknowledging having read the "Tiffin Limited Warranty," including the arbitration agreement and indicating understanding and agreeing with the Limited Warranty's provisions and terms. Peterson maintains that he relied on the Five Star Warranty in deciding to purchase a Tiffin motor home, and chose to purchase the RV from the Dealer because the Dealer's location in North Tonawanda, New York, was only 100 miles from Peterson's residence in Erie, Pennsylvania, and much closer than Indiana. Peterson Sur-Reply Affidavit ¶ 4.

After purchasing the RV on September 29, 2016, Plaintiffs stayed in the RV at the Dealer's location for the night, but complained to the Dealer the next morning, on September 30, 2016, that the RV's heat and hot water systems were not working at all,

---

or proceeding shall be brought in such courts, and hereby waive any objection that each may now or hereafter have to the venue of any action or proceeding in any such court.
Limited Warranty, § 9. Jurisdiction and Venue (Dkt. 10-4 at 13-14).

[11] Both the Five Star Warranty and the Limited Warranty provide for a comprehensive warranty from all defects in materials and workmanship for one year or 12,000 miles use, an exterior fiberglass delamination warranty for five years, and a warranty of the unitized construction including the steel and/or aluminum roof, walls, and floor structural frame of the entire RV coach for ten years.

[12] Dkt. 10-8.

and the headlights were malfunctioning. Peterson left the RV with the dealer while repairs were made, but nine days after picking up the RV and returning to Erie,[13] there were multiple malfunctions with the RV's electrical system including headlights, interior lights, bedroom lights, the radio, and the dashboard USB, along with wood work fit and finishing defects, and the awning did not properly close. On November 16, 2016, the Dealer picked up the RV from Peterson's Erie, Pennsylvania home to make the necessary repairs, returning the repaired RV on March 9, 2017. Peterson continued to have problems with the RV, including on July 1, 2017, when jacks would not properly level the RV and the alarm would not shut off, and September 2, 2017, when the engine overheated and the RV broke down on the side of the highway in New York. Following the September 2, 2017 breakdown, the RV was again returned to the Dealer but on September 23, 2017, the Dealer advised Peterson the parts ordered to repair the RV had yet to arrive. In early November 2017, the Dealer advised the RV was repaired and ready for Peterson to pick up, but in his conversation with the Dealer, Peterson realized all the repairs had not been made, and the Dealer responded they would contact Defendant to get any necessary parts.

As of November 20, 2017, when the instant action was filed, the RV remained at the Dealer awaiting repairs.

## DISCUSSION

Defendant moves to dismiss the instant action pursuant to Fed.R.Civ.P. 12(b)(3) ("Rule 12(b)(3)"), for improper venue based on the forum selection clause's requirement

---

[13] The record does not indicate how long it took for the RV to be repaired.

that any action be filed in the Northern District of Alabama, Defendant's Memorandum at 5-8, or, alternatively, pursuant to Fed.R.Civ.P. 12(b)(2) ("Rule 12(b)(2)"), for lack of personal jurisdiction, Defendant's Memorandum at 8-16, or as a further alternative, transferred pursuant to 28 U.S.C. § 1404 ("§ 1404"), for the convenience of parties and witnesses and in the interest of justice. *Id*. at 16-18. Whether pursuant to the forum selection clause or § 1404, Defendant argues the action, if not dismissed for improper venue or for lack of personal jurisdiction, should be venued in the Northern District of Alabama. *Id*. at 5-8, 16-18. In opposition, Plaintiffs argue the forum selection clause is not valid, Plaintiffs' Response at 5-11, Defendant is subject to personal jurisdiction in this court pursuant to New York's long-arm jurisdiction statute, N.Y. Civ. Prac. L. & R. § 302(a) ("§ 302(a)"), *id*. at 11-20, and a transfer to the Northern District of Alabama would not be in the interest of justice. *Id*. at 20-23. In further support of its motion, Defendant argues the forum selection clause is enforceable, Defendant's Reply at 1-8, Plaintiffs are unable to establish Defendant is subject to long-arm jurisdiction in New York, *id*. at 8-9, and the Northern District of Alabama is the proper venue for this action. *Id*. at 9-10. In further opposition, Plaintiffs object to an affidavit attached to Defendant's Reply, *i.e.*, the Affidavit of Binoy George ("George Affidavit"),[14] as misrepresenting evidence before the court regarding Peterson's receipt of the Limited Warranty when purchasing the RV. Plaintiffs' Sur-Reply, *passim*. In further support of its motion, Defendant characterizes Plaintiffs' Sur-Reply as "disingenuous" because the evidence establishes Peterson signed four documents attesting to his receipt of the Limited Warranty. Defendant's Sur-Reply, *passim*.

---

[14] Dkt. 19-1.

Because Defendant seeks dismissal of this action based on improper venue as well as lack of personal jurisdiction, the court makes the preliminary observation that regardless of whether Defendant is subject to personal jurisdiction in this court, or whether the matter is properly venued here, the court has jurisdiction to decide whether to transfer or dismiss the case pursuant to 28 U.S.C. §§ 1404(a) or 1406(a).  *See Haidon v. Budlong & Budlong, LLC*, 318 F.Supp.3d 568, 581 (W.D.N.Y. 2018) (granting defendant's motion to dismiss for lack of personal jurisdiction, but transferring matter to another venue, and citing cases including, *inter alia*, *SongByrd, Inc. v. Estate of Grossman*, 206 F.3d 172, 179 n.9 (2d Cir. 2000) ("lack of personal jurisdiction could be cured by transfer to a district in which personal jurisdiction could be exercised with the transfer authority derived from either section 1406(a) or section 1404(a)" (citing *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466 (1962) (holding a district court lacking both personal jurisdiction and proper venue could transfer under § 1406(a) to a district where both defects were avoided))).  The decision to transfer under either § 1404(a) or § 1406(a) "'lies within the sound discretion of the district judge.'"  *Id.* (quoting *Gaymar Industries, Inc. v. FirstMerit Bank, N.A.*, 2007 WL 894217, at * 6 (W.D.N.Y. Mar. 21, 2007) (citing *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964))).  Furthermore, because personal jurisdiction over Defendant informs the venue question, it is addressed first.

## 1.    Jurisdiction

Defendant moves pursuant to Fed.R.Civ.P. 12(b)(2) ("Rule 12(b)(2)") for dismissal of the action based on a lack of personal jurisdiction asserting that Plaintiffs cannot rely for general jurisdiction on N.Y. Civ. Prac. L. & R. § 301 because Defendant, a foreign business entity, does not maintain a continuous and systematic affiliation with

New York, nor is there any basis for long-arm jurisdiction pursuant to N.Y. Civ. Prac. L. & R. § 302 because Defendant lacks the requisite minimum contacts with New York and the exercise of long-arm jurisdiction over Defendant would not comport with due process considerations.  Defendant's Memorandum at 8-16.  In opposition, Plaintiffs do not dispute Defendant is not subject to personal jurisdiction in New York under § 301, but maintain that personal jurisdiction against Defendant is authorized pursuant to New York's long-arm statute, specifically § 302(a)(1) (transacting any business within the state or contracting anywhere to supply goods or services in the state), and § 302(a)(2) (committing a tortious act within the state), based upon the alleged sale in New York of Defendant's defective product, the RV, and then breaching the warranty for such product.  Plaintiffs' Response at 13-20.  In further support of dismissal for lack of personal jurisdiction, Defendant asserts it does not maintain sufficient contacts with New York where less than 5% of its annual sales occur, and that not only is the dealer not Defendant's agent, but Plaintiffs fail to reference any caselaw where New York courts have applied long-arm jurisdiction to a foreign vehicle manufacturer when the vehicle was purchased through a third party.  Defendant's Reply at 8-9.

Fed.R.Civ.P. 12(b)(2), provides for dismissal of an action by motion for lack of personal jurisdiction over the defendant.  "Jurisdiction to resolve cases on the merits requires both authority over the category of claim in suit (subject-matter jurisdiction) and authority over the parties (personal jurisdiction), so that the court's decision will bind them." *Ruhrgas AG v. Marathon Oil Co.,* 526 U.S. 574, 577 (1999).  Personal jurisdiction "is concerned with the relationship of a given defendant to the particular geographic area in which a case is brought."  *U.S. ex rel. Thistlethwaite v. Dowty*

*Woodville Polymer, Ltd.,* 110 F.3d 861, 864 (2d Cir. 1997). The burden of proving

personal jurisdiction is on the party asserting it. *Robinson v. Overseas Military Sales*

*Corp.,* 21 F.3d 502, 507 (2d Cir. 1994) (citing cases). Although lack of subject matter

jurisdiction cannot be waived and may be raised at any time during an action, *Kontrick*

*v. Ryan,* 540 U.S. 443, 455 (2004), personal jurisdiction may be forfeited by failing to

timely raise such defense. *Hamilton v. Atlas Turner, Inc.,* 197 F.3d 58, 60 (2d Cir. 1999)

(holding defendant forfeited lack of personal jurisdiction defense by failing to make

appropriate motion during four-year interval after filing answer that asserted lack of

personal jurisdiction as an affirmative defense), *cert. denied,* 530 U.S. 1244 (2000).

In the instant case, Defendant has not forfeited such defense, but moves to dismiss for

an asserted lack of personal jurisdiction. *Hamilton,* 197 F.3d at 60. Nevertheless,

although the parties do not dispute that the instant action is between citizens of different

states and assuming, *arguendo,* the statutory threshold of $75,000 has been met for the

purposes of establishing subject matter jurisdiction based on diversity under 28 U.S.C. §

1332, such facts do not automatically result in personal jurisdiction over non-domiciliary

defendants. *See Armstrong v. Virgin Records, Ltd.,* 91 F.Supp.2d 628, 637 (S.D.N.Y.

2000) ("It is, after all, possible for a court to have subject matter jurisdiction over a

particular set of claims, but not personal jurisdiction over a particular defendant.").

Rather, "[p]ersonal jurisdiction over a defendant in a diversity action in the United States

District Court for the [Western] District of New York is determined by reference to the

relevant jurisdictional statutes of the State of New York." *Beacon Enterprises, Inc. v.*

*Menzies,* 715 F.2d 757, 762 (2d Cir.1983) (citing cases) (bracketed material added).

It is undisputed that Defendant is a foreign corporation incorporated and maintaining its principal place of business in Alabama. "[P]ersonal jurisdiction over a [non-domiciliary] defendant in a diversity action is determined by reference to the law of the jurisdiction in which the court sits," *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 57 (2d Cir. 1985), here, New York. The New York statutes relevant here include N.Y. Civ. Prac. L. & R. §§ 301 ("§ 301") and 302 ("§ 302__"), as interpreted and applied by New York courts. In particular, as interpreted and applied by New York courts, under § 301, a court has personal jurisdiction over a foreign defendant if the defendant "is engaged in such a continuous and systematic course of 'doing business' in New York as to warrant a finding of its 'presence' in this jurisdiction." *Delagi v. Volkswagen AG of Wolfsburg, Germany*, 278 N.E.2d 895, 896 (N.Y. 1972). Here, not only does the record not contain sufficient information to permit the court to determine whether Defendant's activities in New York sufficiently qualify as "regular, systematic and permanent" so as to amount to "doing business" in New York, but Plaintiffs do not assert Defendant is subject to personal jurisdiction under § 301; rather, Plaintiffs assert personal jurisdiction over Defendant under New York's long-arm statute, § 302. Plaintiffs' Response at 13-20.

"In opposing a motion to dismiss for law of personal jurisdiction, [Plaintiffs] bear[ ] the burden of establishing that the court has jurisdiction . . . ." *Grand River Enterprises. Six Nations, Ltd. v. Pryor*, 425 F.3d 158, 165 (2d Cir. 2005) (internal quotation marks and citation omitted). To defeat a motion to dismiss for lack of personal jurisdiction made prior to discovery, as in the instant case, a plaintiff must make a *prima facie* showing of personal jurisdiction either through "legally sufficient allegations of

jurisdiction" in the pleadings, *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir.), *cert. denied*, 498 U.S. 854 (1990), or through its own affidavits and supporting materials. *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981).

Here, Plaintiffs argue Defendant is subject to long-arm jurisdiction in New York, pursuant either to § 302(a)(1) (transacting any business within the state or contracting anywhere to supply goods or services in the state), or § 302(a)(2) (committing a tortious act within the state), based upon the allege sale in New York of a defective product, the RV, to the dealer and subsequently breaching the RV's warranty. Long-arm jurisdiction under § 302(a)(2), however, is not available for the breach of warranty claim, which essentially is a contract claim. *See Suffolk County v. Long Island Lighting Co.*, 728 F.2d 52, (2d Cir. 1984) ("warranty and contract remedies exist to afford injured parties the benefit of their bargain") (citing *Martin v. Julius Dierck Equipment Co.*, 374 N.E.2d 97, 99-100 (N.Y. 1978) ("a cause of action for breach of warranty is a contractual remedy, a remedy which seeks to provide the parties with the benefit of their bargain")). Additionally, "under New York law, a breach of contract generally does not give rise to a separate claim in tort." *Hume v. Lines*, 2016 WL 1031320, at * 2 (W.D.N.Y. Mar. 8, 2016) (citing *Clark-Fitzpatrick, Inc. v. Long Island R. Co.*, 516 N.E.2d 190, 193-94 (N.Y. 1987) ("It is a well-established principle that a simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated.")). Further, insofar as Plaintiffs assert breach of implied warranty, Plaintiffs have failed to allege sufficient privity with Defendant, an essential prerequisite for either a breach of contract or breach of implied warranty claim, given that Plaintiffs are not

also alleging personal injury.  *See Haag v. Hyundai Motor America*, 969 F.Supp.2d 313, 316-17 (W.D.N.Y. 2013) (dismissing breach of implied warranty and breach of contract claims asserted against defendant automobile manufacturer because it was undisputed that the plaintiff's vehicle was not purchased from the defendant, but from an independent dealer of vehicle manufactured by the defendant).  Accordingly, the court addresses only whether Defendant is subject to long-arm jurisdiction in New York under § 302(a)(1).

A defendant whose contacts with New York are so insignificant that the defendant cannot be considered to be "doing business" in New York for purposes of § 301, may nevertheless be subject to personal jurisdiction in New York under its long-arm statute based on a showing of lesser contacts with the state provided the cause of action arose from such contacts.  N.Y. Civ. Prac. L. & R. § 302; *Bensusan Restaurant Corp. v. King*, 126 F.3 25, 26 (2d Cir. 1997).  As relevant to the instant case, § 302(a)(1) allows for a court to "exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent[ ] transacts any business within the state or contracts anywhere to supply goods or services in the state . . . ." N.Y. Civ. Prac. L. & R. § 302(a)(1).  Demonstrating that a defendant "transacted business" in New York so as to be suable in New York under § 302(a)(1), provided the cause of action arises from that transaction, requires considerably less contact with New York than required to establish jurisdiction under § 301 based on "doing business" in New York which can subject the defendant to suit on an unrelated cause of action. *Beacon Enterprises, Inc. v. Menzies*, 715 F.2d 757, 762-63 (2d Cir. 1983).

Section 302(a)(1) "is a 'single act statute' and 'proof of one transaction in New York is sufficient to invoke jurisdiction, even [if] the [defendant] never enters the state, so long as the [defendant's] activities were purposeful and there is a substantial relationship between the transaction and the claim asserted.'" *Daniel v. American Bd. of Emergency Medicine*, 988 F.Supp. 127, 229 (W.D.N.Y. 1997) (quoting *Kreutter v. McFadden Oil Corp.*, 522 N.E.2d 40, 43 (N.Y. 1988), and citing *Beacon Enterprises, Inc.*, 715 F.2d at 764). The jurisdiction test under § 302(a)(1) is, therefore, qualitative rather than quantitative, and the inquiry should be designed to determine whether the "non-resident defendant has engaged in some purposeful activity in this State in connection with the matter at suit." *Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Inc.*, 209 N.E.2d 68, 75 (N.Y. 1975). Section 302(a)(1) allows jurisdiction "only over a defendant who has 'purposefully availed himself of the privilege of conducting activities within New York and thereby invoked the benefits and protections of its laws.'" *Fort Knox Music Inc. v. Baptiste*, 203 F.3d 193, 196 (2d Cir. 2000) (quoting *Parke-Bernet Galleries v. Franklyn*, 256 N.E.2d 506, 508-09 (N.Y. 1970)). Jurisdiction under § 302(a)(1) "is proper 'even though the defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted.'" *Fischbarg v. Doucet*, 880 N.E.2d 22, 26 (N.Y. 2007) (quoting *Deutsche Bank Sec., Inc. v. Montana Bd. of Invs.*, 850 N.E.2d 1140, 1142 (N.Y. 1160) (further quotation marks and citation omitted).

"To determine the existence of jurisdiction under section 302(a)(1), a court must decide (1) whether the defendant 'transacts any business' in New York and, if so, (2) whether this cause of action 'aris[es] from' such a business transaction." *Best Van*

*Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007) (quoitng *Deutsche Bank Sec., Inc.*, 850 N.E.2d at 1142).  "Courts look to 'the totality of the defendant's activities within the forum to determine whether a defendant has transacted business in such a way that it constitutes purposeful activity satisfying the first prong of the test."  *Id.* (internal quotation marks, citations, and brackets omitted).  "As for the second part of the test, a suit will be deemed to have arisen out of a party's activities in New York if there is an articulable nexus, or a substantial relationship, between the claim asserted and the actions that occurred in New York."  *Id.* (same).  In other words, "[i]f the defendant has 'transacted business' in New York, it is suable on any cause of action that arises out of the transaction."  *Hoffritz for Cutlery, Inc.*, 763 F.2d at 58.

With regard to the first prong, the parties do not dispute that Defendant sold the RV to Colton, Defendant's authorized dealer, who is located in New York.  *See* Werner Affidavit ¶ 7 (averring "Tiffin does sell its recreational vehicles to various dealers around the country, including in the State of New York . . . [but] Tiffin does not derive substantial revenue from New York."); Werner Affidavit Exh. 2 (copy of August 19, 2016 invoice from Tiffin to Colton for the subject RV indicating Colton is the party to be billed for the RV which was to be shipped to Colton in New York).  Accordingly, the record establishes that Defendant contracted to supply goods in New York as the first prong for personal jurisdiction under § 302(a)(1) requires.  To satisfy the second prong under § 302(a)(1), *i.e.*, "that the cause of action arise from the contacts with New York, there must be an 'articulable nexus' . . . or 'substantial relationship' . . . between the business transaction and the claim asserted."  *Al Rushaid v. Pictet & Cie.*, 68 N.E.3d 1, 11 (N.Y. 2016) (quoting *Licci v. Lebanese Canadian Bank*, 984 N.E.2d 893, 901 (N.Y. 2012)).

"This inquiry is 'relatively permissive . . . [ ] does not require causation, but merely 'a relatedness between the transaction and the legal claim such that the latter is not completely unmoored from the former, regardless of the ultimate merits of the claim.'" *Id.* (quoting *Licci*, 984 N.E.2d at 901) (§ 302(a)(1) "does not require that every element of the cause of action pleaded must be related to the New York contacts; rather, where at least one element arises from the New York contacts, the relationship between the business transaction and the claim asserted supports specific jurisdiction under the statute."). In other words, "[t]he claim need only be 'in some way arguably connected to the transaction.'" *Id.*

In the instant case, Defendant's sale of the RV to Colton, Defendant's authorized Dealer, was undoubtedly with the understanding that Colton would, in turn, sell the RV to a consumer, here, Plaintiffs, and that such sale would be accompanied by Defendant's manufacturer's warranty, *i.e.*, the Limited Warranty, which requires the retail consumer bring the RV to an authorized Dealer, such as Colton, for any maintenance and repairs pursuant to the warranty. The Limited Warranty specifically "applies to the original retail purchaser. . . ," Limited Warranty § 1, and obligates Defendant "to repair or replace, as necessary, at its option, any defects in material or workmanship, to the covered portion of the motorhome which are defective at the time of purchase or become defective during normal use during the Warranty Period, at no charge to purchaser." *Id.* § 2. Accordingly, Plaintiffs' claims against Defendant do not directly arise from Defendant's sale of the RV to Colton in New York, but from the terms of the Colton's resale of the RV to Plaintiffs at Defendant's authorized dealer, which terms include the Limited Warranty requiring Plaintiffs bring the RV to an authorized

Tiffin servicer, in this case Colton located in New York, for maintenance and repair. Further, insofar as Plaintiffs are suing for breach of an express warranty, "[t]he law in New York, for many years, has been clear. 'There can be no warranty, express or implied, without privity of contract,'" *Mull v. Colt Co.*, 31 F.R.D. 154, 168 (S.D.N.Y. 1962) (quoting *Turner v. Edison Storage Battery Co.*, 161 N.E. 423, 424 (N.Y. 1928), "since a warranty is an incident of a contract of sale." *Id.* (citing *Fairbank Canning Co. v. Metzger*, 23 N.E. 372, 373 (N.Y. 1890)). *See Mario Valente Collezioni, Ltd. v. Confezioni Semeraro Paolo, S.R.L.*, 264 F.3d 32, 37 (2d Cir. 2001) (affirming district court's finding of long-arm jurisdiction under § 302(a)(1) on a contract claim where the undisputed facts established "[g]oods were shipped to New York under the contract. As there was a contract to ship goods to New York, entered into by plaintiff and defendants, and goods were shipped under that contract, the district court correctly concluded jurisdiction was proper."). Under these circumstances, the court finds the second prong requiring Plaintiffs' claims "in some way arguably connected to the transaction" between Defendant and Colton in New York, *Licci*, 984 N.E.2d at 901, is met.

A finding that both prongs for personal jurisdiction under § 302(a)(1) does not end the inquiry; rather the exercise of personal jurisdiction under New York's long-arm statute also must comport with federal constitutional due process requirements. *LaMarca v. Pak-Mor Mfg. Co.*, 735 N.E.2d 883, 886 (N.Y. 2000). "It is well established that a nondomiciliary must have "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice" *Al Rushaid*, 68 N.E.3d at 12 (quoting *International Shoe Co. v.*

*Washington,* 326 U.S. 310, 316 (1945) (internal quotation marks and citations omitted)).

Relevantly, the Second Circuit observes that "despite the fact that section 302(a)(1) ...

and constitutional due process are not coextensive, and that personal jurisdiction

permitted under the long-arm statute may theoretically be prohibited under due process

analysis, we would expect such cases to be rare." *Licci,* 732 F.3d at 170. The so-called

"minimum contacts" test for due process "has come to rest on whether a defendant's

'conduct and connection with the forum State' are such that it should reasonably

anticipate being haled into court there." *LaMarca,* 735 N.E.2d at 887 (quoting *World-*

*Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). Such minimum

contacts exist where a defendant "purposefully avails itself of the privilege of conducting

activities within the forum State." *Id.* In particular,

> if the sale of a product of a manufacturer or distributor * * * is not simply an
> isolated occurrence, but arises from the efforts of the manufacturer or distributor
> to serve directly or indirectly, the market for its product in other States, it is not
> unreasonable to subject it to suit in one of those States if its allegedly defective
> merchandise has there been the source of injury to its owner or to others.

*World-Wide Volkswagen*, 444 U.S. at 297 (distinguishing between fortuitous
circumstances, including that plaintiff was injured in Oklahoma when vehicle
manufactured by defendant and purchased by the plaintiff in New York, did not
constitute sufficient contact to support personal jurisdiction in Oklahoma, and cases
where the manufacturer purposefully directs products into the forum state).

Nor is *World-Wide Volkswagen* limited to personal injury actions; rather, the plaintiff

franchisor's exercise of Florida's long-arm jurisdiction over the defendant Michigan

franchisee in Florida in a contract and trademark infringement action was held not to

offend due process in *Burger King v. Rudzewicz*, 471 U.S. 462, 472-73 (1985) ("parties

who reach out beyond one state and create continuing relationships and obligations

with citizens of another state are subject to regulation and sanctions in the other State

for the consequences of their activities).  Furthermore, although Defendant asserts 4.12% of its 2017 sales were from New York transactions, Werner Affidavit ¶ 7,[15] a company's knowledge that 5% of its products would be sold in New York has been held to satisfy the due process requirements of minimum contacts for purposes of long-arm jurisdiction under § 302.  *See Darienzo v. Wise Shoe Stores, Inc.*, 427 N.Y.S.2d 831, 834 (2d Dep't 1980) (holding defendant's knowledge that 5% of its products would be sold to New York consumers sufficient to infer reasonable expectation of being subjected to suit in New York).  In the instant case, Defendant's repeated shipment of RVs to its authorized dealers in New York, *see* Werner Affidavit ¶ 7 ("Tiffin does sell its recreational vehicles to various dealers around the country, including in the State of New York . . ."), is with the anticipation the RVs will be re-sold to retail purchasers who will rely on the accompanying warranties, drafted by Defendant and requiring the purchasers bring their RVs to the authorized dealers for maintenance and repairs, constitutes a purposeful availment New York law to "achieve the wrong complained of in this suit [and] satisfies the minimum contacts component of the due process inquiry." *Licci,* 732 F.3d at 173.

Accordingly, Defendant is subject to personal jurisdiction in New York pursuant to § 312(a)(1).  Defendant's motion to dismiss for lack of personal jurisdiction therefore should be DENIED.

---

[15] Defendant does not aver to its New York sales for any other year, nor does Defendant provide any data to support its asserted 2017 New York sales, although Werner avers that as Director of Business Affairs at Tiffin, she reviewed and approved the information in her affidavit.  Werner Affidavit ¶¶ 1, 3.

## 2. Venue[16]

Having determined Defendant is subject to personal jurisdiction in New York, the court turns to whether the action is properly venued here, whether the action should be transferred pursuant to the forum selection clause, or should be dismissed for improper venue. Relying on the Limited Warranty's "forum selection clause," Defendant moves pursuant to Fed.R.Civ.P. 12(b)(3) ("Rule 12(b)(3)"), to dismiss the action for failure to comply with the forum selection requiring the action be filed in the Northern District of Alabama – Northwestern Division. Defendant's Memorandum at 5-8. In opposition, Plaintiffs argue the forum selection clause is unenforceable under the applicable four-part analysis set forth by the Second Circuit Court of Appeals especially because Plaintiffs were not provided with a copy of Limited Warranty in which the forum selection clause is contained. Plaintiffs' Response at 4-11. In further support of dismissal, Defendant argues the forum selection clause is neither unreasonable nor unfair, Defendant's Reply at 1-5, and is not the product of fraud or overreaching, *id.* at 5-8. Defendant also submits additional evidence intended as proof that Plaintiffs received a copy of the Limited Warranty and, thus, the forum selection clause, at the time of purchase which evidence Plaintiffs maintain is false and should not be considered. Plaintiffs' Sur-Reply at 1-4. Defendant responds by urging the court to accept as proof of Plaintiffs' receipt of the Limited Warranty several documents signed by Plaintiffs further indicating such receipt. Defendant's Sur-Reply at 1-4.

---

[16] As discussed, Discussion, *supra*, at 9 (citing *SongByrd, Inc.*, 206 F.3d at 179 n.9 ("lack of personal jurisdiction could be cured by transfer to a district in which personal jurisdiction could be exercised with the transfer authority derived from either section 1406(a) or section 1404(a)"), regardless of whether the District Judge agrees with the recommendation that Defendant's motion to dismiss for lack of personal jurisdiction be denied, the court has jurisdiction to address the venue arguments.

As stated, Defendant argues for dismissal of the Complaint under Rule 12(b)(3) for improper venue or, alternatively, to transfer the matter to the Northern District of Alabama in accordance with the Limited Warranty's forum selection clause.  To assist the reader, the court first provides a brief overview of the procedural aspects of venue.

As relevant, the federal venue provisions provide

> A civil action may be brought in –
> (1) a judicial district in which any defendant resides, if all defendants are resident of the State in which the district is located;
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b) ("§ 1391(b)").

Further,

> For all venue purposes –
> (1) a natural person, . . . shall be deemed to reside in the judicial district in which that person is domiciled;
> (2) an entity with the capacity to sue and be sued in its common name under applicable law, whether or not incorporated, shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question and, if a plaintiff, only in the judicial district in which it maintains its principal place of business; * * *.

28 U.S.C. § 1391(c) ("§ 1391(c)").

Change of venue may be sought pursuant to 28 U.S.C. § 1404 which provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  28 U.S.C. § 1404(a) ("§ 1404(a)").  In contrast, where improper venue is asserted, "[t]he

district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a) ("§ 1406(a)"). In the instant case, whether Defendant seeks relief under § 1404(a) or under § 1406(a), the result is the same, *i.e.*, the matter must be transferred to the Northern District of Alabama either pursuant § 1404(a) based on the forum selection clause, or under § 1406(a) in accordance with the court's authorized discretion to transfer the matter to a jurisdiction in which the action could have been brought.

In particular, although Defendant moves in the instant case pursuant to Rule 12(b)(3) to dismiss the complaint for improper venue based on the forum selection clause, it is settled that dismissal for improper venue is authorized "only when venue is 'wrong' or 'improper' in the forum in which it was brought." *Atlantic Marine Const. Co., Inc. v. United States District Court for the Western District of Texas*, 571 U.S. 49, 55 (2013) ("Atlantic Marine"). The undersigned, however, has found Defendant is subject to long-arm jurisdiction under § 302(a)(1), Discussion, *supra*, at 20, and, accordingly, Defendant thus "resides" in New York by operation of § 1391(b)(1) and (c)(2), *i.e.*, providing for venue over a defendant who actually resides in New York, or is deemed to reside in New York by virtue of being subject to personal jurisdiction in New York. Thus, venue here was never improper here, precluding dismissal under Rule 12(b)(3), and the court thus addresses Defendant's alternative request that the matter be transferred pursuant to § 1404(a) in accordance with the forum selection clause.[17]

---

[17] Venue in this court could also lie under § 1391(b)(2) if "a substantial part of the events or omissions giving rise to the claim occurred" in this district, a possibility the parties do not address, Given the undersigned's determination that Defendant is subject to personal jurisdiction here, the question is merely academic and need not be reached. Moreover, even if the determination regarding personal jurisdiction

Significantly, the Supreme Court recognizes that the doctrine of *forum non conveniens* supplies "the appropriate way to enforce a forum selection clause." *Atlantic Marine*, 571 U.S. at 61. As the Supreme Court explains, § 1404(a) "is merely a codification of the doctrine of *forum non conveniens* for the subset of cases in which the transferee forum is within the federal court system; in such cases, Congress has replaced the traditional remedy of outright dismissal with transfer." *Id.* (citing cases).

"[A] forum selection clause modifies, and therefore should be a part of, the *forum non conveniens* analysis." *Fasano v. Yu Yu*, 921 F.3d 333, 337 (2d Cir. 2019) (citing cases). "Where the parties have contractually selected a forum . . . the 'usual tilt in favor of the plaintiff's choice of forum gives way to a presumption in favor of the contractually selected forum.'" *Id.* (quoting *Martinez v. Bloomberg LP*, 740 F.3d 221, 218 (2d Cir. 2014). "Nevertheless, the presumption of enforceability is not automatic." *Id.* Rather, "[d]etermining whether to dismiss a claim based on a forum selection clause involves a four-part analysis," *Phillips v. Audio Active, Ltd.*, 494 F.3d 378, 383 (2d Cir. 2007) (citing cases), originally set forth in *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972), and referred to as the "*Bremen* standard."[18] *Id.* at 384. In particular, the court must (1) inquire "whether the clause was reasonably communicated to the party resisting enforcement"; (2) "classify the clause as mandatory or permissive, i.e., to decide whether the parties are *required* to bring any dispute to the designated forum or simply *permitted* to do so"; and (3) ask "whether the claims and parties involved in the

_____

is incorrect, the undersigned does not reach the issue not only because the parties have not addressed it, but even under Defendant's further alternative argument for dismissal for improper venue, analyzed under § 1406(a), the matter is transferred to the Northern District of Alabama. *See* Discussion, *infra*, at 35-36.
[18] Although *M/S Bremen* was a case in admiralty, the Second Circuit applies the *Bremen* standard to diversity cases. *Phillips*, 494 F.3d at 384 (citing *Jones v. Weibrecht*, 901 F.2d at 18-19).

suit are subject to the forum selection clause." *Id.* at 383-84. If these three parts are satisfied, the forum selection clause is presumptively enforceable, requiring, as the fourth part, the court "ascertain whether the resisting party has rebutted the presumption of enforceability by making a sufficiently strong showing that 'enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching.'" *Id.* (quoting *M/S Bremen*, 407 U.S. at 15). Further, "[b]ecause '[q]uestions of venue and the enforcement of forum selection clauses are essentially procedural, rather than substantive, in nature,' federal law applies to the interpretation of forum selection clauses in diversity cases." *Magi XXI, Inc. v. Stato della Citta del Vaticano*, 714 F.3d 714, 721 (2d Cir. 2013) (quoting *Jones v. Weibrecht*, 901 F.2d 17, 19 (2d Cir. 1990)). In the instant case, application of the four-part analysis establishes the forum selection clause is enforceable.[19]

With regard to the first inquiry, the record establishes the forum selection clause was reasonably communicated to Plaintiffs. Specifically, as Defendant argues, Defendant's Memorandum at 7, in connection with the purchase of the RV, Plaintiffs, on September 29, 2016, signed a Warranty Registration Form ("Warranty Registration"),[20] thereby acknowledging Peterson read the Limited Warranty and understood the Limited Warranty's provisions to which Plaintiffs also agreed to be bound. In opposition, Plaintiffs maintains that Peterson never saw the Limited Warranty until just before the instant action was filed when, while the RV was undergoing repairs at Colton RV,

---

[19] Although federal courts generally apply the law contractually chosen by the parties to interpret a forum selection, in the absence of an applicable choice of law provision, as in the instant case, "it is well established in this Circuit that the rules set out in *M/S Bremen* applies to the question of enforcement of an apparently governing forum selection clause, irrespective of whether a claim arises under federal or state law." *Phillips*, 494 F.3d at 384 (citing cases).
[20] Dkt. 10-4 at 19 (signed by Peterson on behalf of himself and DIPE).

Peterson discovered the Limited Warranty inside a large bag of booklets and brochures that was inside the RV at the time of purchase.  Plaintiffs' Response at 2-3; Affidavit of Michael Peterson (Dkt. 18-1) ("Peterson Affidavit"), ¶ 5.  Plaintiffs also assert that Peterson's limited eighth-grade education renders him an uneducated and unsophisticated consumer who cannot be held responsible for signing the Warranty Registration, but that Peterson relied on the representation made by Defendant's owner, Tiffin, at the Hershey RV show Peterson attended prior to purchasing the RV where Tiffin handed Peterson the brochure on the last page of which was printed the Five Star Warranty after Peterson expressed to Tiffin that quality and warranty were his most important considerations in deciding which RV to purchase, but that Tiffin never mentioned any requirement that any lawsuit be filed in Alabama.   Peterson Affidavit ¶¶ 4-6.  As such, Plaintiffs further maintain the only warranty applicable in the instant action is the Five Star Warranty found in the RV's brochure which does not contain any forum selection clause.  *Id.*  In further support of the instant motion, Defendant urges the court to reject Plaintiffs' attempt to present Peterson as unsophisticated in light of the fact that Peterson is the owner and president of two successful businesses, such that "it strains credulity for Peterson to argue that he confused the actual RV warranty, provided to him at the time of purchase, with a brochure he received at an RV show in a different state . . . ."  Defendant's Reply at 2-3.  Defendant further argues that under applicable caselaw, Peterson's signature on the Warranty Registration[21] is conclusive proof the Limited Warranty was received by Plaintiffs.  *Id.* at 4.  Defendant also submits the Affidavit of Binoy George (Dkt. 19-1) ("George Affidavit"), Colton RV finance manager, who avers

---

[21] The Warranty Registration is signed both by Peterson and on behalf of DIPE.

that on September 29, 2016, during the "pay-sign process" by which Plaintiffs purchased the RV, George personally provided Peterson with the Limited Warranty and witnessed Peterson sign the Warranty Registration. George Affidavit ¶¶ 1, 5. In further opposition, Plaintiffs dispute George's recollection of handing the Limited Warranty to Peterson, reiterating the only discussion of the RV's warranty was between Peterson and Tiffin at the Hershey RV show. Plaintiffs' Sur-Reply at 3-4. In further support of transferring venue pursuant to the forum selection clause, Defendant challenges Plaintiffs' insistence that Peterson was never provided with a copy of the Limited Warranty, despite admitting to be in possession of the Limited Warranty, Defendant's Sur-Reply at 1 (referencing Peterson Affidavit ¶ 5), Plaintiffs do not dispute that Peterson signed the Warranty Registration, as well as three other documents attesting to the receipt of the Limited Warranty, *id.* at 2, that it is implausible Peterson believed the entire warranty pertaining to the RV, for which Plaintiffs paid more than $ 500,000, was the Five Star Warranty printed on the bottom third of the back page of the RV's marketing brochure, *id.* at 2-3, and Plaintiffs' arguments to the contrary are merely self-serving and unsupported statements insufficient to avoid the forum selection clause's application. *Id.* at 3-4.

*Progressive Ins. Co. v. Gulf Stream Coach, Inc.*, 2008 WL 905232, at * 3 (E.D.N.Y. Mar. 31, 2008), cited by Defendant, Defendant's Reply at 4, is inapposite because in that case, the court held a defendant moving to enforce a forum selection clause met the burden of production by submitting the "executed copy" of the subject warranty. In the instant case, however, Defendant has not produced an "executed copy" of the Limited Warranty containing the forum selection clause but, rather, the

separately executed Warranty Registration which specifically references the Limited Warranty.

Nevertheless, not only do the parties fail to reference any caselaw providing a warranty is not valid unless separately executed, but it has been held that a receipt that "is valid and unambiguous on its face . . . carries with it the presumption of regularity." *See Diatraco Corp. v. Freeman*, 568 F.Supp. 778, 780 (S.D.N.Y. 1982) (holding in fraud action between jewelers concerning defendant's alleged return of semiprecious stone for ruby, receipt signed by the plaintiff's duly designated agent carried presumption of regularity). *See also Fiedelman v. Paragon Paint & Varnish Corporation*, 64 N.Y.S.2d 385, 387-88 (Sup. Ct. Kings Cty. 1946) (plaintiff's mere testimony that she paid cash for stock of defendant corporation was overcome by record proof furnished by plaintiff's husband consisting of physical receipt given by defendant corporation's treasurer and bearing husband's signature acknowledging receipt of cash from plaintiff's husband for such stock such that declaratory action seeking to enforce rights with regard to stock belonged not to the plaintiff but to her husband who was not a party to the action, requiring dismissal of the claim). Further, "the fact a party is a non-signatory to an agreement is insufficient, standing alone, to preclude enforcement of a forum selection clause." *Aguas Lenders Recovery Grp., LLC v. Suez, S.A.*, 585 F.3d 696, 701 (2d Cir. 2009). Significantly, Peterson does not deny the signature on the Warranty Registration acknowledging receipt of the Limited Warranty is his. Under similar circumstances in which a plaintiff was required to indicate his assent to a clear and unambiguous forum selection clause by "click-wrap agreement," *i.e.*, by clicking on a designated "I agree" button on a computer screen, courts within the Second Circuit have upheld the assent.

*See*, *e.g.*, *Bahl v. New York College of Osteopathic Medicine of New York Institute of Technology*, 2017 WL 5479655, at * 5 (E.D.N.Y. Mar. 31, 2017) (use of click-wrap agreement constitutes reasonable communication of forum selection clause); and *TradeComet.com LLC v. Google, Inc.*, 693 F.Spp.2d 370, 377-78 (S.D.N.Y. 2010) (holding, for purposes of establishing forum selection clause's enforceability, seller of internet advertising "reasonably communicated" such contract clause through use of clickwrap agreement and buyer manifested agreement to the contract, including the forum selection clause, by clicking on the relevant computer icon prior to being allowed website access to the seller's product), *aff'd*, 435 Fed.Appx. 31 (2d Cir. July 26, 2011). Nor does Peterson assert he did not receive the Limited Warranty upon purchasing the RV; rather, Plaintiffs admit the Limited Warranty was among numerous brochures and booklets contained in a large bag located in the RV upon its purchase, but that Peterson never read the Limited Warranty until shortly before commencing this action while the RV was undergoing its final repairs.  Peterson Affidavit ¶ 5.  Plaintiffs' further attempt to characterize Peterson as unsophisticated based on his limited formal education also fails given Peterson's extensive work history as owner and president of two businesses which provided him with the means to afford an RV valued in excess of $ 500,000. Accordingly, the first consideration for enforcing the Limited Warranty is satisfied.

The second consideration, whether the forum selection clause is properly classified as mandatory, requiring the parties bring the dispute to Alabama, or merely permissive, simply permitting the parties to do so, is also satisfied.  Specifically, the forum selection clause plainly states the parties agree that "<u>exclusive</u> jurisdiction" of any legal proceeding involving the Limited Warranty is in the state or federal court for

Franklin County, Alabama, and waive any objection to the venue of such legal action or proceeding in another venue. Limited Warranty ¶ 9 (underlining added). Nor do Plaintiffs deny the forum selection clause is mandatory, but actually admit the clause "is mandatory in nature." Plaintiffs' Response. Thus, the second consideration for enforcement of the Limited Warranty is also satisfied. Similarly, Plaintiffs also concede the third inquiry, *i.e.*, that the forum selection clause covers the claims and parties involved in the suit. Plaintiffs' Response at 6. With the first three inquiries satisfied, the court turns to the fourth inquiry requiring Plaintiffs, as the party opposing enforcement, demonstrate with regard to the forum selection clause that

> (1) its incorporation was the result of fraud or overreaching; (2) the law to be applied in the selected forum is fundamentally unfair; (3) enforcement contravenes a strong public policy of the forum in which suit is brought; or (4) trial in the selected forum will be so difficult and inconvenient that the plaintiff effectively will be deprived of his day in court.

*Martinez*, 740 F.3d at 228 (internal quotation marks and citations omitted).

These four exceptions are narrowly interpreted. *MBC Fin. Servs. Ltd. v. Boston Merch. Fin., Ltd.*, 704 Fed.Appx. 14, 18 (2d Cir. Aug. 23, 2017) (citing *S.K.I. Beer Corp. v. Baltika Brewery*, 612 F.3d 705, 711 (2d Cir. 2010)). Plaintiffs do not challenge the forum selection clause based on the second exception which requires that the law to be applied in the Northern District of Alabama is fundamentally unfair, nor the third exception regarding contravening a strong public policy of the forum in which the action was brought.[22]

---

[22] Insofar as Plaintiffs assert claims predicated on New York law, the court notes Plaintiffs do not argue a New York courtroom, rather than an Alabama courtroom, is better suited to deciding such claims, nor, as discussed, Discussion, *supra*, at 6, does the Limited Warranty contain a choice of law provision.

The first exception requiring the inclusion of the forum selection clause be the result of fraud or overreaching does not apply. In support of this exception, Plaintiffs argue the forum selection clause is unconscionable under New York law because Peterson was not provided with a copy of the Limited Warranty at the time of the purchase and, thus, did not have a reasonable opportunity to understand the terms of the Limited Warranty but, rather, thought the Five Star Warranty was the RV's only warranty and, thus, the warranty to which the Warranty Registration applied, Plaintiffs' Response at 8-10, and Peterson's limited eighth-grade education establishes a disparity in bargaining power. *Id.* at 10. There is no merit to these arguments; rather, Peterson's insistence that he was unaware of the existence of the Limited Warranty is belied by his admission that the Limited Warranty was among the papers contained in the packet of brochures and booklets inside the RV at the time of the purchase, but that Peterson did not read through the information at that time. *See* Peterson's Affidavit ¶ 5 ("After we purchased the RV, there was a large suitcase sized bag sitting in the RV with a bunch of brochures and booklets. It was not until close to a year later, just before we filed this lawsuit and the RV was in the shop for its final repair attempt, that I was going over the suitcase size bag contents and discovered another, second Tiffin warranty document in the large bag of booklets and brochures."). Nevertheless, despite its assertedly late discovery by Peterson, the Complaint relies on the language contained only in the Limited Warranty, rather than in the Five State Warranty. *See* Complaint ¶ 9 (referencing various warranty provisions found in the Limited Warranty, but not in the Five Star Warranty). Furthermore, the Warranty Registration specifically refers to additional warranty provisions not found in the language of the Five Star Warranty,

including a reference to an arbitration agreement set forth in the Limited Warranty.[23]
*See* Warranty Registration (providing that by signing the Warranty Registration, the
purchaser acknowledges having read "the Tiffin Limited Warranty, including the
arbitration agreement . . . and agree to be bound by its terms."). Because the Five Star
Warranty does not refer to any arbitration agreement, this statement alone should have
alerted Plaintiffs that the Warranty Registration did not pertain to the Five Star Warranty.
Accordingly, there is no basis for finding Defendant engaged in any fraud.

Nor does the record support a finding that the forum selection clause is
overreaching. The Supreme Court held enforceable a similar forum selection clause
despite the fact the terms of the form contract were not subject to negotiation and the
plaintiff had no bargaining power with the defendant in *Carnival Cruise Lines, Inc. v.
Shute*, 499 U.S. 585, 593-95 (1991). In finding the non-negotiated forum selection
clause was nevertheless enforceable, the Court observed that there was "a special
interest in limiting the fora in which [a party] potentially could be subject to suit" and that
such "special interest" existed where the sued vendor engaged in transactions with
individuals in many locales such that a mishap could, absent a forum selection clause,
subject the defendant vendor to litigation in multiple fora. *Id.* at 595-96 (holding forum
selection clause was enforceable where it did not take away the plaintiff's right to a trial
by a court of competent jurisdiction but merely required any action be brought in a court
located in Florida). Similarly, in the instant case, the forum selection clause is a non-
negotiated clause included in the Limited Warranty, a form contract, and does not

---

[23] The court notes none of the parties raises as an issue the possibility of submitting to arbitration in
accordance with the arbitration clause prior to commencing this action, and the court does not further
discuss the impact the arbitration clause on the case.

deprive Plaintiffs of their right to sue Defendant, but is merely intended to protect Defendant, whose RVs are sold throughout the country, from being haled into court nationwide. Furthermore, Plaintiffs' reliance on Peterson's limited education blinks reality given Peterson's ownership of two successful companies, a fact reported by Defendant, Defendant's Reply at 6 ("Peterson attempts to portray himself as an uneducated and unsophisticated person when the reality is that he owns multiple businesses, has negotiated and owned vehicles worth six-figures, and personally engages in contracts and six-figure sales on behalf of his businesses"), and which Plaintiffs do not deny. Accordingly, the instant forum selection clause is not overreaching, and Plaintiffs have failed to establish the first exception applies.

Nor have Plaintiffs demonstrated the fourth exception, requiring that trial in the selected forum be so difficult and inconvenient as to effectively deprive Plaintiffs of their day in court, applies. In support of this exception, Plaintiffs argue Peterson specifically selected the subject RV to purchase because the Dealer, Colton RV, was located in New York less than 100 miles from Peterson's Erie, Pennsylvania residence. Plaintiffs' Response at 7. According to Plaintiffs, Peterson previously owned a different motor home for which Peterson had to drive to Indiana for repairs, which was not convenient. *Id.* at 7-8. Plaintiffs further maintain that the drive from Peterson's residence in Erie, Pennsylvania to Alabama is more than 1000 miles, which cannot be accomplished in less than three days because Peterson's health prevents Peterson from traveling for extended periods of time in an upright position and requires Peterson take rest breaks on long motor vehicle trips. *Id.* at 8. Relevantly, it does not escape the court's notice that Plaintiffs' assertions in support of this argument are largely related to Plaintiffs'

desire for a more conveniently located authorized servicer which, in contrast to the available modes of transportation by air in the event of litigation, would likely require operating the RV.  *See* Peterson's Affidavit ¶ 4 (averring "quality and warranty" were Peterson's "most important" considerations in purchasing a new RV), and Plaintiffs' Sur-Reply at 4 ("The warranty and staying close to home were very important to [Peterson] because he made a mistake when he bought a Thor RV in Indiana and it had to go all the way to Indiana for repairs.  That is why Mr. Peterson stayed nearby and purchase[d] the RV in New York, and that is why Mr. Peterson made the trip to the RV show to talk to Bob Tiffin about the warranty." (citing Peterson's Affidavit ¶ 4)).  In short, being able to travel to New York for anticipated servicing and repairs of the RV, which Plaintiffs admit were of paramount concern in deciding to purchase the Tiffin RV, is unrelated to the forum selection clause which comes into play only for purposes of litigation, not servicing the RV.

Insofar at Plaintiffs argue the distance between Pennsylvania and Alabama will impede Plaintiffs in prosecuting this action because of the physical hardship to Peterson and increased costs of travel leaving fewer funds for litigation, Plaintiffs' Response at 7-8, such concerns are not entitled to much weight in the present day in light of the widely available alternative means for pursuing litigation such as permitting depositions to be taken by videoconference, air travel where necessary, and document review to be conducted by e-mail.  *See Securities and Exchange Commission v. Aly*, 320 F.R.D. 116, 119 (S.D.N.Y. 2017) (finding availability of videoconferencing for depositions and

use of e-mail for document review significantly reduced travel burden to defendant who lived in Pakistan but was sued in New York). Plaintiffs do not argue otherwise.[24]

Plaintiffs thus have failed to establish any exception to the forum selection clause's enforcement applies. Accordingly, Defendant's motion pursuant to § 1404(a) to transfer venue based on the forum selection clause is GRANTED.

Alternatively, should the District Judge disagree either that Defendant is not subject to personal jurisdiction in this court, or that the matter should be transferred in accordance with the forum selection clause, the undersigned addresses as a further alternative Defendant's motion under Rule 12(b)(3) to dismiss for improper venue. "Objections to improper venue are made through a Rule 12(b)(3) motion, and § 1406(a) provides for either dismissal or transfer if venue is found to be improper." *In re HTC Corp.*, 889 F.3d 1349, 1352 n. 2 (Fed.Cir. 2018) (citing 28 U.S.C. § 1406(a), and Fed.R.Civ.P. 12(b)(3)), *cert. denied*, __ U.S. __, 139 S.Ct. 1271 (2019).

"When venue is challenged, the court must determine whether the case falls within one of the three categories set out in § 1391(b)." *Atlantic Marine*, 571 U.S. at 56. "If it does, venue is proper; if it does not, venue is improper, and the case must be dismissed or transferred under § 1406(a)." *Id.* Moreover, "[w]hether the parties entered into a contract containing a forum-selection clause has no bearing on whether a case falls into one of the categories of cases listed in § 1391(b)." *Id.* Because the undersigned reaches this further alternative for dismissal for improper venue only in the

---

[24] Nor have Plaintiffs sufficiently argued that litigating in Alabama will significantly impede Plaintiffs in compelling the attendance of witnesses. *See Donnay USA Ltd. v. Donnay International S.A.*, 705 Fed.Appx. 21, 25-26 (2d Cir. Aug. 24, 2017) (holding plaintiff's unsupported statements that transferee forum would be unable to subpoena necessary witnesses made in opposing enforcement of forum selection clause did not carry the plaintiff's heavy burden to rebut the forum selection clause's presumed enforceability).

event that the forum selection clause is not enforceable, it is assumed for the sake of this portion of the discussion that venue is not proper here.

Nevertheless, § 1406(a) specifically provides that rather than dismissing the action for improper forum, the court has the discretion to transfer the action to any district in which the action could have been brought. This is true even if Defendant is not subject to personal jurisdiction in this court. *SongByrd, Inc.*, 206 F.3d at 179 n.9 ("lack of personal jurisdiction could be cured by transfer to a district in which personal jurisdiction could be exercised with the transfer authority derived from either section 1406(a) or section 1404(a)"). Here, given Defendant's undisputed residence in the Northern District of Alabama, venue lies in the Northern District of Alabama, 28 U.S.C. § 1391(b)(1) (providing for venue for a civil action in "a judicial district in which any defendant resides"), and the court, in its discretion, transfers the matter there.[25] *Haidon*, 318 F.Supp.3d at 581 (decision to dismiss for improper venue or to transfer lies within the sound discretion of the district court).

## CONCLUSION

Based on the following, Defendant's Motion should be DENIED insofar as Defendant seeks to dismiss the action under Fed.R.Civ.P. 12(b)(2) for lack of personal jurisdiction, and is GRANTED as to the request under 28 U.S.C. § 1404(a) to transfer venue to the Northern District of Alabama as provided for by the forum selection clause, or alternatively, should be DENIED insofar as Defendant seeks dismiss under

---

[25] Under § 1406(a), the forum selection clause is inapplicable such that the court's analysis of its enforceability under § 1404(a) is irrelevant. In this circumstance, the forum selection clause is thus rendered without effect. *See Atlantic Marine*, 571 U.S. at 56 ("Whether venue is 'wrong' or 'improper' depends exclusively on whether the court in which the case was brought satisfies the requirements of federal venue laws, and those provisions say nothing about a forum-selection clause.").

Fed.R.Civ.P. 12(b)(3) for improper venue with the matter transferred, in the court's

discretion, pursuant to 28 U.S.C. § 1406(a) to the Northern District of Alabama,

Northwestern Division.

SO ORDERED, with regard to Defendant's
request to transfer venue.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE


Respectfully submitted, as to Defendant's motion
to dismiss for lack of personal jurisdiction or,
alternatively, for improper venue,

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      November 26, 2019
            Buffalo, New York

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(d) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**<u>Failure to file objections within the specified time or to request an</u>**

**<u>extension of such time waives the right to appeal the District Court's Order.</u>**

*Thomas v. Arn*, 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited*, 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of this Report and Recommendation to the attorneys for the Plaintiffs and the Defendant.

SO ORDERED.

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      November ___, 2019
              Buffalo, New York